UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EVGENII DIABIN,**<br><br>Plaintiff,<br>v.<br>**MARCO RUBIO, et al.,**<br><br>Defendants.[1] | Civil Action No. 24-3374 (JDB) |

**MEMORANDUM OPINION AND ORDER**

In April 2024, as part of the immigration visa application process, Alina Diabina and her family interviewed with a consular officer at the U.S. Embassy in Cyprus. The consular officer granted visas to Diabina's husband and their two daughters—but not to Diabina. Instead, the consular officer refused Diabina's application, placed it in a bureaucratic limbo known as "administrative processing," and asked her to supplement her application with additional information. Diabina promptly provided the requested information. And yet, more than sixteen months later, Diabina has received no word on the status of her application.

Frustrated with the uncertainty hanging over his family, Diabina's husband—Evgenii Diabin—asks this Court to compel State Department officials to act on his wife's application. Defendants seek dismissal. While their threshold arguments fail, they are correct that—at this point—there has not been an unreasonable delay in processing Diabina's application. Accordingly, the Court grants the motion to dismiss without prejudice.

---

[1] See Fed. R. Civ. P. 25(d).

1

**Legal Background**

As part of the immigrant visa process, an applicant interviews with a consular officer at the U.S. embassy or consulate with jurisdiction over his or her residence. See 22 C.F.R. §§ 42.61(a), 42.62(a). Following the interview, the consular officer "must issue the visa" or "refuse the visa." Id. § 42.81(a).[2] Yet a refusal need not mark an end to the applicant's case. Many refused applications wind up in administrative processing, "a status of indefinite duration in which the consular officer may grant the application after consideration of 'additional information.'" Makttoof v. Rubio, Civ. A. No. 24-1344 (JDB), 2025 WL 928706, at *1 (D.D.C. Mar. 27, 2025). If, within a year of the refusal, the applicant provides more evidence "tending to overcome" the reason for his or her supposed ineligibility, the consular officer "shall" reconsider the applicant's case. 22 C.F.R. § 42.81(e). In the end, the applicant may wind up facing the same outcome: refusal. But reconsideration is still required.

**Factual Background**

Diabin fled Russia with his family after he and Diabina were detained for opposing the Russo–Ukrainian War. Pet. for Writ. of Mandamus & Compl. for Injunctive Relief [ECF No. 1] ("Compl.") ¶ 3. An entrepreneur, Diabin "was drawn to the United States for the possibilities and freedom to run his business as he saw fit." Id. So he applied to relocate his family here. Id. But, fearing Russia was an unsafe location from which to await a visa decision, he and Diabina "decided to temporarily relocate" to Cyprus while preparing their visa applications. Id.

Once safe in Cyprus, the Diabin family initiated the immigrant visa application process in July 2023. Id. ¶ 19. On April 4, 2024, a consular officer at the U.S. Embassy in Cyprus interviewed Diabin, Diabina, and their two daughters and reviewed their visa applications. Id.

---

[2] In some circumstances, the consular officer might also discontinue granting a visa, an option not applicable here. See 22 C.F.R. §§ 42.81(a).

2

¶ 24. Afterward, the officer informed Evgenii Diabin and his daughters that their applications had been approved. Id. ¶ 25. But the officer told Alina Diabina that her visa application had been refused, pending administrative processing and her submission of her curriculum vitae and additional answers to questions. Compl. Ex. B [ECF No. 1-4]. Diabina submitted the information that same day. Compl. ¶ 26. But she has since heard no meaningful updates. Id. ¶¶ 33–36.

In December 2024, after Diabina's application had been in administrative processing for eight months, Diabin filed this lawsuit, arguing that his wife's application has been unreasonably delayed and asking the Court to compel State Department officials to act on it. See Compl. ¶ 9; Mem. in Opp'n to Defs.' Mot. to Dismiss ("Mem. in Opp'n") [ECF No. 5] at 11. The lawsuit raises claims under the Administrative Procedure Act ("APA"), 5 U.S.C., § 706(1), the Mandamus Act, 28 U.S.C. § 1361, and the Fifth Amendment's Due Process Clause. See Compl. ¶¶ 55, 69, 76. The defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See Mot. to Dismiss & Mem. in Supp. Thereof [ECF No. 4] ("Mot.") at 1; Reply in Further Supp. of Defs.' Mot. to Dismiss [ECF No. 6] ("Reply") at 1.

**Analysis**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). At this stage, the Court must treat Diabin's factual allegations as true and give him "the benefit of all inferences that can be derived from the facts alleged." E.g., Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks omitted). The same standard applies to a challenge under Rule 12(b)(1) for lack of subject-matter jurisdiction where, as here, the defendants "challenge[] only the legal sufficiency

3

of the plaintiff's jurisdictional allegations." See Simon v. Republic of Hungary, 77 F.4th 1077, 1116 (D.C. Cir. 2023) (internal quotation marks omitted).

The defendants seek dismissal on multiple grounds. For starters, they argue Diabin has failed to state a cognizable due process claim. See Mot. at 12–14. Because Diabin has not contested this argument, the Court will treat that claim as forfeited and dismiss it.

As for Diabin's other claims, the defendants contend the consular nonreviewability doctrine bars this Court from reviewing them in the first place. Mot. at 9–12. The Court disagrees. Next, the defendants posit they have no clear, nondiscretionary duty to take action on Diabina's application. Mot. at 4–8. The Court is unconvinced by this defense, too. But the defendants correctly, if cursorily, argue that Diabin has failed to state a claim of unreasonable delay. Mot. at 1 n.2. For that reason, the Court will grant the motion to dismiss.

### I. Diabin has forfeited his due process argument.

In his complaint, Diabin contends that the defendants' delay violated his procedural and substantive due process rights under the Fifth Amendment. Compl. ¶¶ 70–76. The defendants argue that this constitutional claim "plainly lacks merit" under Supreme Court and D.C. Circuit precedent. See Mot. at 12–14 (citing Dep't of State v. Muñoz, 602 U.S. 899, 911–16 (2024); Dep't of Homeland Sec. v. Thuraissigiam, 140 S. Ct. 1959, 1964 (2020); United States ex rel. Knauff v. Shaugnessy, 338 U.S. 537, 543 (1950); Colindres v. U.S. Dep't of State, 71 F.4th 1018, 1023 (D.C. Cir. 2023)).

Diabin did not respond to the defendants' arguments about this claim. See generally Mem. in Opp'n; see also Reply at 11. His silence is fatal: "[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed

4

arguments as conceded." Wannall v. Honeywell, Inc., 775 F.3d 425, 428 (D.C. Cir. 2014). So the Court will dismiss Diabin's constitutional claim.

**II. The consular nonreviewability doctrine does not bar judicial review here.**

The defendants argue consular nonreviewability bars this suit. Mot. at 9. "Consular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021). The point of the doctrine is to prevent judicial interference with other branches' decisions about whom to admit to or exclude from the country—decisions that may implicate foreign relations or other political considerations. See id. (citing Trump v. Hawaii, 585 U.S. 667, 702 (2018)).

But that doctrine prevents judicial review of the substance of visa decisions; this case, in contrast, is about the timing of a visa decision. Courts in this district consistently have held consular nonreviewability does not bar judicial action in cases about the timing of decisions on visa applications in administrative processing. See Mahmoodi v. Altman-Winans, Civ. A. No. 24-2010 (BAH), 2025 WL 763754, at *5 (D.D.C. Mar. 11, 2025) (referring to "the near-universal consensus of Judges on this Court . . . of holding the doctrine does not apply when a consular officer has refused a visa application under 8 U.S.C. § 1201(g), but the application remains in a state of administrative processing"); Azeez v. Murphy, Civ. A. No. 23-1947 (CRC), 2024 WL 3924565, at *2–3 (D.D.C. Aug. 23, 2024) (drawing distinction between impermissible review of substance and permissible review of timing); Hamdan v. Oudkirk, Civ. A. No. 24-1001 (BAH), 2024 WL 4553983, at *4–5 (D.D.C. Oct. 23, 2024) (same); Makttoof, 2025 WL 928706, at *3 (explaining plaintiff seeks "not the forbidden review of a final decision but rather the permissible

review of its absence"). But see Yaghoubnezhad v. Stufft, 734 F. Supp. 3d 87, 104 (D.D.C. 2024) (holding consular nonreviewability applies to visa applications in administrative processing).

The defendants contend the unpublished D.C. Circuit opinion in Karimova v. Abate, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), unsettled this near consensus by defining the visa refusals that precede administrative processing as final. See id. at *5; see Mot. at 10–12. Even setting aside questions about Karimova's precedential weight, this Court does not agree that Karimova had such an effect. In fact, the Circuit in Karimova explicitly said it was not deciding whether nonreviewability applied in cases about the timing—rather than the substance—of visa decisions. Karimova, 2024 WL 3517852, at *6; see Mahmoodi, 2025 WL 763754, at *6 (collecting cases). But see Asadi v. U.S. Dep't of State, Civ. A. No. 23-1953 (RC), 2024 WL 3835409, at *4 (D.D.C. Aug. 15, 2024) (observing in dictum that Karimova "casts some doubt on the reasoning" of decisions greenlighting judicial review of visa applications in administrative processing). Given that a wealth of other judges have addressed the consular nonreviewability doctrine—and determined it did not preclude review of the timing of decisions on visas in administrative processing—the Court concludes it may evaluate this case.

### III. The defendants have a clear, nondiscretionary duty to reconsider Diabina's visa application.

A court may order agency action only in the "extraordinary" circumstance where an agency has committed a "transparent violation[] of a clear duty to act." In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (citing In re Bluewater Network, 234 F.3d 1305, 1315 (D.C. Cir. 2000)). The court may order agency action either via mandamus, see 28 U.S.C. § 1361, or the APA, see 5 U.S.C. § 706(1). But both routes require that the agency have "failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (emphasis omitted); see also In re Ctr. for Biological Diversity, 53 F.4th 665, 670 (D.C. Cir. 2022).

The defendants contend they have no clear duty to act on a visa application in administrative processing. See Mot. at 4–8. In disclaiming such a duty, they rely once more on Karimova. There, the D.C. Circuit held that APA § 555(b)—which requires agencies to "proceed to conclude a matter presented to [them]" "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time," 5 U.S.C. § 555(b)—imposed on a consular officer no duty to act on a visa application that was in administrative processing. Karimova, 2024 WL 3517852, at *3. Judges in this District have diverged on whether Karimova serves as binding precedent.[3]

At any rate, even if Karimova is binding, it does not end the inquiry into whether the defendants here have a duty to act. For Diabin identifies other possible sources of this duty, including the regulations implementing the INA, see Mem. in Opp'n at 18–21, which the Karimova court had no occasion to consider, see Aramnahad v. Rubio, Civ. A. No. 24-1817 (MAU), 2025 WL 973483, at *8 (D.D.C. Mar. 31, 2025). One such regulation provides that a consular officer "shall . . . reconsider[]" a refused immigrant visa application if the applicant within one year provides additional evidence "tending to overcome the ground of ineligibility on which the refusal was based." 22 C.F.R. § 42.81(e) (emphasis added). This regulation lays out a clear nondiscretionary duty: Consular officers who place refused visa applications under administrative processing must reconsider applications that applicants have later supplemented with such evidence.[4]

---

[3] Compare Ibrahim v. Spera, Civ. A. No. 23-3563 (ABJ), 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) (treating Karimova as binding); Amjad v. Schofer, Civ. A. No. 24-1773 (CJN), 2024 WL 4416984, at *1 (D.D.C. Oct. 4, 2024) (same), with Akter v. Flook, Civ. A. No. 24-146 (CRC), 2025 WL 661296, at *2 n.1 (D.D.C. Feb. 28, 2025) (treating Karimova as not binding); Hajizadeh v. Blinken, Civ. A. No. 23-1766 (LLA), 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024) (same).

[4] See, e.g., Rivas v. Napolitano, 714 F.3d 1108, 1111 (9th Cir. 2013); Aramnahad, 2025 WL 973483, at *8; Makttoof, 2025 WL 928706, at *4–5, *4 n.6 (collecting cases); Haeri Mehneh v. Blinken, Civ. A. No. 24-1374 (ZMF),

That duty applies here unless Diabina exceeded the one-year deadline for providing evidence or provided evidence that did not "tend[] to overcome" the ground for her ineligibility. See id. But she submitted the evidence "on the same day" as her visa refusal. Compl. ¶¶ 24–26. And she submitted that evidence in response to the consular officer's request—a strong indication that the officer thought it tended to overcome the ground for her ineligibility. See Makttoof, 2025 WL 928706, at *4 (drawing similar inference). Thus, the duty to reconsider Diabina's application holds.

### IV. There has been no unreasonable delay warranting the Court to compel agency action.

Because a clear, nondiscretionary duty exists, the Court may review whether the defendants "unreasonabl[y] delayed" discharging that duty. See 5 U.S.C. § 706(1). The defendants, however, urge the Court to weigh at this stage only the threshold defenses of consular nonreviewability and the asserted lack of nondiscretionary duty. See Mot. at 1 n.2; Reply at 5 n.4. The defendants briefly declare in two footnotes that they could show that Diabin failed to state a claim for relief on the merits. See Mot. at 1 n.2; Reply at 5 n.4. And yet they hold back from making that showing. Instead, they prefer to advance their favored arguments first and deploy their unreasonable-delay defense only if necessary.[5] Reply at 5 n.4.

But the Court is not bound to consider this case "piecemeal" just because the defendants wish it to. See Mahmoodi, 2025 WL 763754, at *7–8. Because the case law from this jurisdiction clearly supports a determination that Diabin's claim fails under TRAC, it is "patently obvious that

---

2024 WL 5116521, at *6 (D.D.C. Dec. 16, 2024); Ghannad-Rezaie v. Laitinen, 757 F. Supp. 3d 148, 153 (D. Mass. 2024). But see Ramizi v. Blinken, 745 F. Supp. 3d 244, 263 (E.D.N.C. 2024); Nikpanah v. U.S. Dep't of State, Civ. A. No. 24-404 (NAD), 2025 WL 374931, at *7 (N.D. Ala. Feb. 3, 2025).

[5] Diabin, for his part, argues the Court need not reach this analysis because the factual record is insufficiently developed. Mem. in Opp'n at 6. But courts routinely decide whether a plaintiff states an unreasonable-delay claim at the motion-to-dismiss stage, see, e.g., Da Costa v. Immig. Inv. Program Off., 80 F.4th 330, 334 (D.C. Cir. 2023), and this Court sees no reason not to do so here.

[Diabin] cannot possibly prevail based on the facts alleged in the complaint," and the Court may dismiss his complaint without full briefing on this issue. See id. at *8 (cleaned up) (quoting Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 127 (D.C. Cir. 2012)); Mem. Op. & Order at 9 n.8, Ba Tis v. U.S. Dep't of State, Civ. A. No. 24-219 (JDB) (D.D.C. Mar. 27, 2025); cf. Ikon Glob. Mkts., Inc. v. CFTC, 859 F. Supp. 2d 162, 164 (D.D.C. 2012) (dismissing case for failure to state claim despite motion to dismiss raising only jurisdictional issue). Therefore, the Court will reach whether Diabin has stated a claim—without requiring another round of briefing.

In evaluating whether the complaint sufficiently alleges an unreasonable delay, the Court looks for guidance to the six factors laid out in Telecomms. Rsch. & Action Ctr. v. Fed. Commc'n Comm'n ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984). Those factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Id. (cleaned up).

The first and fourth factors—whether some rule of reason justifies the time an agency takes to act and whether speeding up the agency action would entail the plaintiff jumping ahead of others in line—are generally the most important. Tahavori v. Blinken, Civ. A. No. 23-1460 (JDB), 2024 WL 1328546, at *4 (D.D.C. Mar. 28, 2024); see also Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023); Ahmed v. Blinken, 759 F. Supp. 3d 1, 11 (D.D.C. 2024). And here they favor the defendants.

9

The first factor bolsters the defendants' position. In analyzing whether visa timelines are governed by a rule of reason, courts typically look to comparable cases for guidance. Arab v. Blinken, 600 F. Supp. 3d 59, 70 (D.D.C. 2022). "No bright lines have been drawn in this context, but district courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." Id. (cleaned up); accord Tekle v. Blinken, Civ. A. No. 21-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) (collecting cases) ("Courts in this District consistently have held that two or three years does not constitute an unreasonable delay."). Here, the time elapsed since Diabina submitted the additional information is approximately fifteen months, see Compl. ¶ 26—well within the range that courts in this District have held to be not unreasonable. Being stuck in visa limbo for more than a year is surely stressful and difficult. Yet "courts in this District wait significantly longer before finding that this factor weighs in a plaintiff's favor." See Makttoof, 2025 WL 928706, at *6 (holding two-year delay of reviewing visa application in administrative processing not unreasonable).

As for the fourth factor, granting Diabin relief would entail fast-tracking one agency action ahead of actions of higher or competing priority. Ordering the State Department to expedite its review of one visa application would move other applications back one space in line "and ultimately delay[] the final adjudication of the applications that were skipped." See Meyou v. U.S. Dep't of State, Civ. A. No. 21-2806 (JDB), 2022 WL 1556344, at *4 (D.D.C. May 17, 2022) (collecting cases); see also In re Barr Lab'ys, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991). So this factor also weighs in favor of the defendants.

The second TRAC factor tips slightly toward Diabin. This factor asks whether Congress has indicated the speed with which agencies should proceed. TRAC, 750 F.2d at 80. While

10

Congress has provided no statutory deadline for processing visa applications, instead giving agencies "wide discretion in the area of immigration processing," Tekle, 2022 WL 1288437, at *3 (quoting Skalka v. Kelly, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)), it has expressed in a statement of purpose "the sense . . . that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application," 8 U.S.C. § 1571(b)). More than twice that amount of time has passed since Diabina submitted her additional information, and far longer still has passed since she first filed her application. On balance, this factor weighs slightly in favor of Diabin. See Makttoof, 2025 WL 928706, at *6.

The third and fifth factors, however, do not help Diabin's case. Those pertain to the harm that waiting causes to the health, welfare, and other interests of the plaintiff. See TRAC, 750 F.2d at 80. Diabin alleges that he, Diabina, and their children have endured significant hardships—including the exacerbation of Diabina's generalized anxiety disorder and a reduction in Diabin's earnings—from the uncertainty associated with the administrative processing. Compl. ¶¶ 3–6; Mem in Opp'n. at 10–11. The Court takes the alleged facts as true, and it does not doubt that the wait has imposed emotional strain on this family. Even so, these factors do not boost Diabin's case because, as difficult as this wait surely has been for the family, "the alleged adverse effects are relatively minor compared to" some other applicants. See Sharifymoghaddam v. Blinken, Civ. A. No. 23-1472 (RCL), 2024 WL 939991, at *6 (D.D.C. Mar. 5, 2024) (citing Da Costa v. Immigr. Inv. Program Off., 643 F. Supp. 3d 1, 15 (D.D.C. 2022)); see also Akter, 2025 WL 661296, at *4 (determining these factors tipped toward plaintiff where there was risk of persecution); Hamdan, 2024 WL 4553983, at *10 (determining these factors did not tip toward plaintiff despite three-year separation from wife).

The sixth factor—agency impropriety—is neutral. A court need not find any agency impropriety underlying a delay in order to deem that delay unreasonable. See TRAC, 750 F.2d at 80. In other words, the fact that Diabin has alleged no impropriety does not detract from his case. "This factor is thus neutral and does not alter the Court's analysis." Palakuru v. Renaud, 521 F. Supp. 3d 46, 53 (D.D.C. 2021).

Taking all the factors together, and affording the first and fourth factors the most weight, the Court holds Diabin's complaint fails to state a plausible claim for unreasonable delay. "The most important factors—those regarding the length of the delay and concerns about line-jumping—weigh in favor of granting the motion to dismiss." Meyou, 2022 WL 1556344, at *5. The emotional and other hardships befalling Diabina's family while her visa application remains suspended in a state of uncertainty are significant. But, at this point, they do not justify compelling the State Department to process this case ahead of the many other visa cases that undoubtedly also implicate weighty interests.

Hence, Diabin's complaint fails to state a claim for unreasonable delay.

## Conclusion

For the foregoing reasons, it is hereby **ORDERED** that the defendants' motion to dismiss is **GRANTED**. It is further **ORDERED** that this case is **DISMISSED** without prejudice.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated: July 2, 2025